BRIAN P. CLARK
Nevada Bar # 4236
CLARK TATOM, LLC
7670 W. Lake Mead Blvd., Suite 135
Las Vegas, Nevada 89128
Telephone: (702) 474-0065
Facsimile: (702) 474-0068
bpc@clarktatom.com

Attorneys for Horizon Self Storage LLC
dba All Storage of Anthem

UNITED STATES BANKRUPTCY COURT

DISTRICT OF NEVADA

In re:

ICAP FINANCIAL CORP.,

Debtor.

Case No. BK-S-08-23983-BAM

Chapter 7

## MOTION FOR RELIEF FROM AUTOMATIC STAY and MOTION FOR TRUSTEE TO ABANDON PROPERTY

Horizon Self Storage, LLC dba All Storage of Anthem, (Owner) by and through its attorneys, the law office Clark Tatom, LLC, hereby files this Motion for Relief From Automatic Stay, and Motion for Trustee to Abandon Property. Movant respectfully represents to the Court as follows:

1. Horizon Self Storage, LLC dba All Storage is the owner of real property commonly known as 2620 W. Horizon Ridge Pkwy, Henderson, NV 89052. The assessor parcel number is 177-25-702-034.

2. On December 24, 2004, ICAP Financial Corp. ("debtor") entered into a commercial lease agreement with All Storage to rent, on a renewing month-to-month basis, certain storage space at All Storage's property, Unit 604. (See Exhibit A.)

3. On November 24, 2008, ICAP Financial Corp. filed a voluntary petition under Chapter 7 of the Bankruptcy Code.

4. Trustee James F. Lisowski, Sr. (hereinafter "Trustee") was appointed to the case.

5. The Trustee has not asserted a claim to personal property that is located in the Owner's Property and has not provided any instructions concerning the personal property.

6. On June 26, 2009, the trustee designated the case as a "no asset" case.

7. Debtor's schedules estimate the value of the personal property at $12,300 as of November 2008.

8. The Owner is stayed from taking any action in relation to the Debtor or the property and Owner has not received any instructions from the Trustee regarding the property or adequate security for the storage fees.

9. The Trustee is not paying the Owner for possession of the storage unit.

10. Instead of confirming the commercial lease as provided by the rules, Debtor and Trustee have taken no action in relation to the personal property, in effect seeking to obtain free rent to the detriment of Owner.

11. The actions of the Trustee and the Debtor cause an administrative claim to arise under Section 503(b)(1)(A), as storage of the personal property at the Owner's Property has preserved the estate personal property.

12. Each day the Trustee and Debtor allow the personal property to sit in the Property of the Owner, the administrative claim increases.

13. The Property is a storage facility and the Debtor rented unit 604, with a lease rate of $313.50 per month.

14. It is Owner's belief, that the Trustee does not want to continue accruing expenses to the "no asset" estate as it is not economically feasible to continue to occupy the space given the estimated value of the personal property coupled with the monthly expense of storing the personal property as set forth above.

15. ICAP Financial Corp. terminated the lease buy its failure to pay the monthly charges on the lease accruing since December 2008.

16. ICAP Financial Corp. claims to maintain personal property on the premises of All Storage, of which All Storage is in actual possession.

17. Rental payments became delinquent in December 2008, and other charges have also been assessed. Debtor has continued in the premises without paying rent since the filing of the petition in bankruptcy. The amount of rent that is delinquent and owned to All Storage is $5,116.00. (See Exhibit B, Civilla declaration.)

18. Under 11 U.S.C. §365(c), "The trustee may not assume or assign any executory contract or unexpired lease of the debtor, whether or not such contract or lease prohibits or restricts assignment of rights or delegation of duties, if - . . . (3) such lease is of nonresidential real property and has been terminated under applicable nonbankruptcy law prior to the order for relief."

**I.    This Court should compel the Trustee to abandon the property.**

As this is a "no asset" case, there is no money or property to disburse to the creditors, and no money to pay All Storage an administrative claim, pursuant to Section 503(b)(1)(A) of the code, for preserving property of the estate. (When a trustee actually uses leased property, the rent incurred is an allowable expense. See *In re Thompson*, 788 F.2d 560, 562 (9th Cir. 1986).) There is no dispute as to the ownership of the real Property where the estate property is being stored. The Trustee is knowingly using the Owner's Property to store the personal property of the debtor to the detriment of the Owner. Owner has provided a letter to the Trustee requesting resolution and to mitigate the administrative claim. (See Exhibit C.) However, the Trustee and the Debtor have not responded to Owner's letter. Owner requests this Court to enter an order compelling the Trustee to abandon the property or to provide adequate assurance that the storage fees will be paid.

**II.    This Court should grant relief from the stay to permit Owner to proceed with State law remedies.**

Section 362(d) provides:

(d) On request of a party in interest and after notice and a hearing, the court shall grant relief from the stay provided under subsection (a) of this section, such as by terminating, annulling, modifying, or conditioning such stay—

(1) for cause, including the lack of adequate protection of an interest in property of such party in interest;

In this case there is cause to grant relief from the automatic stay. The estate of the Debtor has no interest in the real Property, and has not removed the personal property of the estate from the real property nor paid for the storage. Owner requests relief from the automatic stay so that it can serve the appropriate notices for State court relief upon the Debtor and Trustee due to the abandonment of the property by Trustee and Debtor. If the Trustee abandons the estate personal property then the Owner should be allowed to proceed with its State law remedies against the personal property, including clearing out the Property and disposing of the personal property. The Owner is experiencing monthly losses due to the nonpayment of the storage fees and the Trustee's occupation of the building.

Further, the Trustee or Debtor have not provided any adequate protection for storing the personal property at the Owner's Property. To the Owner's knowledge the Debtor claimed the value of the personal property to be $12,300 in November, 2008. The monthly cost to occupy the storage unit is $313.50, which amount has not been paid since the filing of the bankruptcy in November 2008.

## CONCLUSION

Based upon the foregoing, Owner requests this Court to grant relief from the automatic stay so that it can pursue state law remedies. Owner also requests that the Court compel the Trustee to abandon the personal property. In the alternative, Owner requests this Court to allow its administrative claim in the amount of $5,116.00 plus a per diem amount for the time period it takes for the Trustee to remove the personal property.

Dated this 2nd day of March, 2010.

CLARK TATOM, LLC

Brian P. Clark
Nevada Bar No. 4236
7670 W. Lake Mead Blvd., Suite 135
Las Vegas, Nevada 89128

## * * § 362 INFORMATION SHEET * *

ICAP FINANCIAL CORP     08-23983-BAM          1
DEBTOR                  Case No:        MOTION #:

Horizon Self Storage, LLC                CHAPTER: __7__
MOVANT

*Certification of Attempt to Resolve the Matter Without Court Action:*
Moving counsel hereby certifies that pursuant to the requirements of LR 4001(a)(3), an attempt has been made to resolve the matter without court action, but movant has been unable to do so.
Date: _March 2, 2010_          Signature: _____
                                           Attorney for Movant

PROPERTY INVOLVED IN THIS MOTION: __Personal Property__

NOTICE SERVED ON: Debtor(s)__X__; Debtor's counsel__X__; Trustee__X__;

DATE OF SERVICE: _Sept. 14, 2009_

| MOVING PARTY'S CONTENTIONS: | DEBTOR'S CONTENTIONS: |
|---|---|
| The EXTENT and PRIORITY of LIENS: | The EXTENT and PRIORITY of LIENS: |
| 1st _____ | 1st _Does not list property in schedules_ |
| 2nd _____ | 2nd _____ |
| 3rd _____ | 3rd _____ |
| 4th _____ | 4th _____ |
| Other: _____ | Other: _____ |
| Total Encumbrances: _____ | Total Encumbrances: _____ |
| APPRAISAL of OPINION as to VALUE: | APPRAISAL of OPINION as to VALUE: |

/ / /

/ / /

TERMS of MOVANT'S CONTRACT
with the DEBTOR(S)::

Amount of Note: __None__
Interest Rate: __None.__
Duration: __None.__
Payment per Month: __$313.50.__
Date of Default: __December 5, 2008__
Amount in Arrears: __$5,116.00__
Date of Notice of Default: __December 30, 2008__

SPECIAL CIRCUMSTANCES:
The Trustee is asserting claim to personal property located in the real property. The Owner has been damaged by the Trustee's failure to assume the commercial contract, led to believe it would receive a administrative claim but the Trustee is not removing the personal property.

SUBMITTED BY: Horizon Self Storage, LLC    SIGNATURE: _[signature]_

DEBTOR'S OFFER of "ADEQUATE
PROTECTION" for MOVANT

None.

SPECIAL CIRCUMSTANCES:

SUBMITTED BY:_____
SIGNATURE:_____

# Exhibit A

# All Storage
at Anthem

Phone (702) 568-5555

Unit # 604   Size 12X40
Gate Code: 6 0 4 2 1 3 2 *

THIS RENTAL AGREEMENT is entered into this 24 day of Dec, 04 between **ALL STORAGE**, 2620 W. Horizon Ridge Pkwy. - Las Vegas, Nevada 89052 herein after called the LESSOR, and the LESSEE whose name is:

NAME: ICAP FINANCIAL CORP.   ADDRESS: 1613 HERITAGE SPRINGS DR.
CITY: HENDERSON   STATE: NV   ZIP CODE: 89052
PHONE#: 270-9360   WORK PH#: 818-822-9622
DRIVER'S LIC.#: A0519013   ST: CA   SOCIAL SECURITY #: _____

### ALTERNATE NOTICE INFORMATION

NAME: HAROLD TURNER   ADDRESS: 1613 HERITAGE SPRINGS DR.
CITY: HENDERSON   STATE: NV   ZIP CODE: _____
PHONE#: 270-9360

IF ALTERNATE INFORMATION REFUSED, LESSEE MUST SIGN: _____

AUTHORIZED ACCESS PERSONS: James Fiscus, Charles Bell

WHOSE RESIDENCE AND ALTERNATE NAME AND ADDRESSES ARE SET FORTH ABOVE, FOR THE PURPOSE OF LEASING OR RENTING A CERTAIN SPACE AS HEREINAFTER DESCRIBED AND WITH THE EXPRESS UNDERSTANDING AND AGREEMENT THAT NO BAILMENT OR DEPOSIT OF GOODS FOR SAFEKEEPING IS INTENDED OR CREATED HEREUNDER.

It is agreed by and between Lessor and Lessee as follows:
1. THESE FACILITIES ARE OPERATED UNDER THE NEVADA SELF-STORAGE ACT. (N.R.S. 108.472.SEQ.)

2. DESCRIPTION OF PREMISES
Lessor leases to Lessee and Lessee leases from Lessor the above referenced storage unit and or parking space (hereinafter the "Premises") located at **ALL STORAGE** and included in a larger facility at the same site containing similar leased real property and common areas for the use of Lessee and other Lessees (the entire facility is hereinafter referred to as the 'Project'). Lessee has examined the Premises and the Project and by placing his initials hereto acknowledges and agrees that the Premises and the common areas of the Project are satisfactory for all purposes, including the safety and security thereof, for which Lessee shall use the Premises or the common areas of the Project. Lessee shall have access to the Premises and the common areas of the Project only during such hours and days as are regularly posted at the Project. LESSEE MUST ENTER ACCESS CODE OR BE SUBJECT TO A $50 FEE TO RESET ALARM - X ____

3. TERM
The term of this Rental Agreement shall commence as of the date first above written and shall continue on a month-to-month occupancy.

4. RENT
Lessee shall pay the Lessor as a monthly rent, without deduction, prior notice, demand or billing statement, the sum of $250.00 plus additional monthly rent of ____ due pursuant to paragraph 9, per month on or before the first of each month. Lessee shall pay, in advance, at least one full month's rent, and Lessee understands and agrees that under no circumstances will Lessee be entitled to a refund of the first full month's rent. Any rent paid in excess of that owed for the first month shall be credited to rent payable for the month immediately following. With respect to any month-to-month tenancy, the monthly rent may be adjusted by Lessor effective the month following written notice by Lessor to Lessee specifying such adjustment, which notice shall be given not less than thirty (30) days prior to the effective date of any such adjustment. Any such adjustment in the monthly rent shall not otherwise affect the terms of this Rental Agreement and all other terms of this Rental Agreement shall remain in full force and effect. NO PARTIAL MONTH REFUNDS.

5. FEES AND DEPOSITS - X ____
(a) Concurrently with the execution of this Rental Agreement, Lessee shall pay to Lessor $10.00 as a non-refundable new account administration fee.
(b) All rent shall be paid in advance on the 1st day of each month and in the event the Lessee shall fail to pay the rent by the 5th day due, Lessee shall pay, in addition to any other amounts due, a late charge of $10.00. If delinquency of rent payment continues, other late charges will be assessed as follows: on the 15th day of delinquency: $15.00, on the 30th day of delinquency: $25.00. In addition to the late charges the following actions and or fees will apply: on the 30th day of delinquency Lessee's lock will be removed from Lessee's storage unit to determine if Lessee is occupying the unit. If the storage unit is occupied, Lessor will secure the door with it's own lock. On the 45th day of delinquency, a certified letter will be sent to the last address of record notifying Lessee that on the 14th DAY FROM POSTMARK AN AUCTION WILL OCCUR TO LIQUIDATE STORED ITEMS TO SATISFY PAST DUE RENT AND FEES. In addition, an announcement will be placed in the local newspaper advertising the auction and as further legal notification of the delinquency. On the 45th day an advertising and notification fee of $50.00 will be assessed.
(c) Rental checks returned not paid will result in a $25.00 NSF charge to the Lessee's unit. In addition, late charges may be assessed.
(d) Lessee has the option of receiving a monthly invoice for a $3.00 charge. YES ____ NO ____

6. LIMITATION OF LESSOR'S LIABILITY-INDEMNITY
Lessor and Lessor's Agents shall not be liable to Lessee for any damage, loss or personal injury to any person, Lessee or any property stored in, on or about the Premises or the Project, arising from any cause whatsoever, including, but not limited to, theft, fire, mysterious disappearance, rodents, acts of God or the active or passive acts, omissions or negligence of Lessor or Lessor's Agents, except that Lessor or Lessor's Agents, as the case may be, may, except as otherwise provided in paragraph 5, be liable to Lessee for damage, loss or personal injury to Lessee or Lessee's property resulting from Lessor's or Lessor's Agent's fraud, willful injury or willful violation of law. Lessee shall indemnify and hold Lessor and Lessor's Agents harmless from any and all damage, loss, or personal injury arising out of or in connection with any damage, loss or personal injury to any person or property occurring in, on or about the Premises, arising in any way out of Lessee's use of the Premises, whether occasioned by Lessor or Lessor's Agent's active or passive acts, omissions or negligence or otherwise, other than damage, loss or personal injury in connection with Lessor's or Lessor's Agents fraud, willful injury or willful violation of law. Notwithstanding anything contained in this Rental Agreement, in no event shall Lessor or Lessor's Agents be liable to Lessee in any amount in excess of $100 for any damage, loss or personal injury to any person, Lessee or any property stored in, on or about the Premises or the Project arising from any cause whatsoever, including, but not limited to, Lessor's or Lessor's Agents active or passive acts, omissions or negligence. LESSEE ACCEPTS RISK OF LOSS. TENANT IS ADVISED TO PURCHASE INSURANCE ON TENANT'S STORED PROPERTY. THE NEVADA LEGISLATURE HAS DECLARED THAT SUCH INSURANCE IS AVAILABLE THROUGH MOST INSURERS. By placing his initials hereto, Lessee acknowledges that he has read, understands and agrees to the provisions of this paragraph. - X ____

IN WITNESS WHEREOF, the parties hereto have executed this AGREEMENT and acknowledges that they have read, are familiar with, and agree to all terms and conditions contained on both sides of this AGREEMENT the day and year first written above, at Las Vegas, Nevada.

BY _____     BY _____
(lessor/agent)                (Lessee)

Continued on reverse side - X ____

7. **USE OF PREMISES AND COMPLIANCE WITH LAW.** Lessee shall not store on the Premises personal property in or to which any other person has any right, title or interest. It is understood and agreed that Lessee may store personal property of various types and values in, or about the Premises without Lessor's knowledge, supervision or control, the value of which may be difficult or impossible to ascertain. It is specifically understood and agreed that Lessor need not be concerned with the kind, quantity, or value of personal property or other goods stored by Lessee in or about the Premises pursuant to this Rental Agreement. Lessee shall not store any improperly packaged food or perishable goods, flammable materials, explosives or other inherently dangerous material, nor perform any welding on the Premises or in the Project. Lessee shall not store any personal property on the Premises which would result in the violation of any law of any governmental authority and Lessee shall comply with all laws, rules, regulations and ordinances of any and all governmental authorities concerning the Premises or the use thereof. Lessee shall not use the Premises in any manner that will constitute waste, nuisance, or unreasonable annoyance to other Lessees in the Project. Lessee acknowledges and agrees that the Premises and the Project are not suitable for the storage of heirlooms or precious, invaluable, or irreplaceable property such as books, records, writings, works of art, objects for which no immediate resale market exists or objects which are claimed to have special or emotional value to the Lessee. Lessee agrees that the value of any such item shall not exceed for any purpose the salvage value of the raw materials of which the item is constituted. Lessee acknowledges that the Premises may be used for storage only, and that the use of the Premises for the conduct of business or for human or animal habitation is specifically prohibited. **IT IS UNLAWFUL TO USE THIS STORAGE FACILITY AS A RESIDENCE.**

8. **TRASH DISPOSAL.** Rent of a storage facility or parking place does not allow one to dispose of any trash whatsoever on the Project or in the Project's dumpster. A Lessee disposing of refuse on the Project, without management consent, will obligate Lessee to pay additional fees, non-payment of which could cause termination of Lessee's right to use the Premises or cause a lien to be placed on Lessee's unit and property. On site manager will set fees to use the dumpster on an available basis dependent upon quantity and makeup of refuse.

9. **LESSOR'S LIEN.** Lessee's personal property in or on the Premises will be subject to a claim for a lien in favor of Lessor and may be sold to satisfy that lien if the rent or other charges due under the Rental Agreement remain unpaid for fourteen (14) consecutive days. In addition, if rent or other charges due under the Rental Agreement remain unpaid for fourteen (14) days or more, Lessor may terminate Lessee's right to use his individual space.

10. **USE OF ELECTRICITY.** In addition to the basic monthly rent payable as provided in paragraph 3 above, Lessee shall pay the additional rent shown in paragraph 3 above in the event Lessee desires the right to use electrical appliances or equipment such as refrigerators, freezers, electrical power tools and like, on the Premises.

11. **ALTERATIONS.** Lessee shall not make or allow any alterations of any kind or description whatsoever to the Premises without, in each instance, the prior written consent of the Lessor.

12. **LOCK.** Lessee shall provide, at Lessee's own expense, a lock for the Premises which Lessee, in Lessee's sole discretion, deems sufficient to secure the Premises. Lessee shall not provide Lessor or Lessor's Agents with a key and/or combination to Lessee's lock. Lessee will nor place more than one lock on its door. Lessor will remove any additional locks in the case of delinquency.

13. **RIGHT TO ENTER, INSPECT, AND REPAIR PREMISES.** Lessee shall grant Lessor, Lessor's Agents or the representatives of any governmental authority, (including police and fire officials) access to the Premises upon three (3) days prior written notice to Lessee. In the event the Lessee shall not grant access to the Premises as required or in the event of an emergency or upon default of any of Lessee's obligations under this Rental Agreement, Lessor, Lessor's Agents or representatives of any governmental authority shall have the right to remove Lessee's lock and enter the Premises for the purposes of examining the Premises or the contents thereof or for the purpose of making repairs or alterations to the Premises and taking such other action as may be necessary or appropriate to preserve the Premises, or to comply with applicable law or enforce any of Lessor's rights. In the event of any damage or injury to the Premises or Project arising from the active or passive acts, omissions or negligence of Lessee, all expenses reasonably incurred by Lessor to repair or restore the Premises or Project shall be paid by Lessee as additional rent and shall be due upon demand by Lessor.

14. **NO WARRANTIES.** Lessor hereby disclaims any implied or express warranties, guarantees or representations of the nature, condition, safety or security of the Premises and the Project and Lessee hereby acknowledges, as provided in paragraph 1 above, that lessee has inspected the Premises and hereby acknowledges and agrees that Lessor does not represent or guarantee the safety or security of the Premises or of any property stored therein. This Rental Agreement sets forth the entire agreement of the parties with respect to the subject matter hereof and supersedes all prior agreements or understandings with thereto.

15. **TERMINATION.** This Rental Agreement shall terminate at the expiration of any term of this Rental Agreement by the party desiring to terminate this Rental Agreement giving written notice by certified or registered mail to the other party of such party's intention to terminate not less than ten (10) days before expiration of the term. Further, this Rental Agreement may, at the option of the Lessor, be terminated upon any default by Lessee under the terms of this Rental Agreement or abandonment of the Premises by Lessee, or by lessor's acceptance of Lessee's oral offer to terminate given not less than two (2) days before the proposed date of termination.

16. **CONDITION OF PREMISES UPON TERMINATION.** Upon termination of this Rental Agreement, Lessee shall remove all Lessee's personal property in the Premises unless such property is subject to Lessor's lien rights pursuant to paragraph 8 and shall immediately deliver possession of the Premises to lessor in the same condition as delivered to Lessee on the commencement date of this Rental Agreement, reasonable wear and tear excepted. Lessee must notify Project Manager upon move-out and leave unit unlocked or Lessee's liability for payment of rent will continue until such time as notification of move out is received.

17. **NOTICES.** Except as otherwise expressly provided in this Rental Agreement or by law, any written notices or demands required or permitted to be given under the terms of this Rental Agreement may be personally served or may be served by first class mail deposited in the United States mail with postage thereon fully prepaid and addressed to the party so to be served at the address of such party provided for in this Rental Agreement. Service of any such notice or demand shall be deemed complete on the date delivered, if personally delivered, or if mailed, shall be deemed complete on the date of deposit in the United States mail, the postage thereof fully prepaid and addressed in accordance with the provisions hereof.

18. **NOTIFICATION OF CHANGE OF ADDRESS.** In the event Lessee shall change Lessee's place of residence or alternate name and address as set forth in this Rental Agreement, Lessee shall give Lessor written notice of any such change within ten (10) days of the change, specifying Lessee's current residence and alternate name, address and telephone numbers. Failure to notify Lessor of any change of address and or phone number in conjunction with failure to pay rent when due will cause termination of this Rental Agreement and any property left on the Premises, whether secured or not, will be considered abandoned.

19. **ASSIGNMENT.** Lessee shall not assign or sublease the Premises or any portion thereof without in each instance the prior written consent of Lessor.

20. **SUCCESSION.** All the provisions of this Rental Agreement shall apply to, bind and be obligatory upon the heirs, executors, administrators, representatives, successors and assigns of the parties hereto.

21. **CONSTRUCTION.** This Rental Agreement shall be governed and construed in accordance with the laws of the State of Nevada. Whenever possible, each provision of this Rental Agreement shall be interpreted in such manner as to be effective and valid under applicable law, but, if any provision of this Rental Agreement shall be invalid or prohibited under such applicable law, such provision shall be ineffective only to the extent of such prohibition or invalidity with invalidating the remainder of such provision or the remaining provisions of this Rental Agreement.

22. **TIME.** Time is of the essence of this Rental Agreement.

23. **RULES AND REGULATIONS.** The rules and regulations posted in a conspicuous place at the Project are made a part of this Rental Agreement and Lessee shall comply at all times with such rules and regulations. Lessor shall have the right from time to time to promulgate amendments and additional rules and regulations for the safety, care and cleanliness of the Premises, Project and all common areas, or for the preservation of good order and upon the posting of any such amendments or additions in a conspicuous place at the Project they shall become a part of this Rental Agreement.

24. **ATTORNEY'S FEES.** Lessee agrees to pay all costs, charges and expenses, including reasonable attorney's fees, incurred by lessor in connection with collection of rent, th enforcement of any rights under this Rental Agreement or any litigation or controversy arising from or in connection with this Rental Agreement. All such costs, charges and expenses shall be made a part of any lien claimed by, or judgement rendered for, Lessor. If no action is instituted by Lessor, such costs, charges and expenses shall be paid by Lessee along with any other claims by lessor upon demand.

# Exhibit B

BRIAN P. CLARK
Nevada Bar # 4236
CLARK TATOM, LLC
7670 W. Lake Mead Blvd., Suite 135
Las Vegas, Nevada 89128
Telephone: (702) 474-0065
Facsimile: (702) 474-0068
bpc@clarktatom.com

Attorneys for Horizon Self Storage LLC
dba All Storage of Anthem

UNITED STATES BANKRUPTCY COURT

DISTRICT OF NEVADA

| In re: | |
|---|---|
| ICAP FINANCIAL CORP., | Case No. BK-S-08-23983-BAM |
| Debtor. | Chapter 7 |

**DECLARATION OF STEVE CIVILLA IN SUPPORT OF MOTION FOR RELIEF FROM AUTOMATIC STAY and MOTION FOR TRUSTEE TO ABANDON PROPERTY**

I, Steve Civilla, declare

1. That I am the Division Manager for Horizon Self Storage, LLC dba All Storage of Anthem.

2. That the All Storage Rental Agreement attached as Exhibit A to the Motion for Relief From Stay is a true and correct copy of the original Rental Agreement signed by Harold Turner on behalf of ICAP Financial Corp. on December 24, 2004.

3. That since ICAP Financial filed bankruptcy on November 24, 2008, ICAP Financial has not made any payment to All Storage for the recurring monthly storage rental fees on Unit 604 at the Anthem location.

4. That on December 30, 2008, All Storage notified ICAP Financial of its default in the rental agreement.

5. That since December 2008, neither ICAP nor the bankruptcy Trustee has made any payment to All Storage for the recurring monthly storage rental fees on Unit 604 at the Anthem location.

6. That since December 2008, neither ICAP nor the bankruptcy Trustee has made any effort to remove the personal property of ICAP from the storage rental unit.

7. That since December 2008, neither ICAP nor the bankruptcy Trustee has confirmed the commercial lease agreement.

8. That since December 2008, neither ICAP nor the bankruptcy Trustee has provided adequate assurance that the monthly storage fees for Unit 604 would be paid for preserving the assets of the bankruptcy estate.

9. That on June 26, 2009, the Trustee designated the case as a "no asset" case.

10. That as of March 1, 2010, the outstanding balance on Unit 604 is $5,116.00.

11. That All Storage continues to incur $313.50 monthly in damages as a direct result of the Trustee's abandonment of the personal property and failure to pay the monthly charges for the storage unit.

12. That All Storage seeks relief from the automatic stay to apply State law remedies for the failure to pay of the monthly rental fees on the real property that is burdened.

13. That on September 14, 2009, counsel for All Storage sent a letter to ICAP's attorney and the Trustee requesting that the issues be resolved without the need to file a motion in the bankruptcy court.

I declare under penalty of perjury that the foregoing is true and correct.

DATED this 2nd day of March, 2010

_____
Steve Civilla

# Exhibit C

# CLARK TATOM, LLC

ATTORNEYS AT LAW

7670 W. LAKE MEAD BLVD., STE. 135
LAS VEGAS, NEVADA 89128
TEL. 702.474-0065 FAX. 702.474-0068

BRIAN P. CLARK
BRADLEY R. TATOM

September 14, 2009

James F. Lisowski, Sr.
Chapter 7 Trustee
P.O. Box 95695
Las Vegas, NV 89193

Nancy L. Allf
GONZALEZ SAGGIO & HARLAN, LLP
411 E. Bonneville, Ste. 100
Las Vegas, NV 89101

Re: ICAP Financial Corp.
Chapter 7
Case No. 08-23983-bam

Dear Colleagues:

I represent All Storage of Anthem. On December 24, 2004, ICAP Financial Corp. ("debtor") entered into a commercial lease agreement with All Storage of Anthem to rent, on a renewing month-to-month basis, certain storage space at All Storage's property, Unit 604. (A copy of the lease agreement is attached hereto.) The debtor filed its Chapter 7 Petition on November 24, 2008.

As you can anticipate from my communication, All Storage has not been paid the monthly lease payments since November 2008. Currently post petition lease payments have created a balance due of $3,235.00. Pursuant to local rules, I would like to enter into a stipulation to (1) lift the automatic stay and allow All Storage to foreclose on its lien to obtain payment on its account; or (2) to obtain payment for overdue amounts for this commercial lease and adequate assurances of future payments. Either of these options would be in lieu of a Motion to Lift Stay.

Please contact me by noon on Friday, September 18, 2009 to discuss the possibility to avoid the Motion to Lift Stay.

Very truly yours,
CLARK TATOM, LLC

Brian P. Clark

# All Storage
### at Anthem
Phone (702) 568-5555

Unit # **604**  Size **12 X 40**
Gate Code **6 0 4 2 1 3 2 ✱**

THIS RENTAL AGREEMENT is entered into this **24** day of **Dec**, **04** between **ALL STORAGE**, 2620 W. Horizon Ridge Pkwy. - Las Vegas, Nevada 89052 herein after called the LESSOR, and the LESSEE whose name is:

NAME: **ICAP FINANCIAL CORP.**  ADDRESS: **1613 HERITAGE SPRINGS DR**
CITY: **HENDERSON**  STATE: **NV**  ZIP CODE: **89052**
PHONE#: **270-9360**  WORK PH#: **818-822-9622**
DRIVER'S LIC.#: **A0519013**  ST **CA**  SOCIAL SECURITY #: _____

### ALTERNATE NOTICE INFORMATION

NAME: **HAROLD TURNER**  ADDRESS: **1613 HERITAGE SPRINGS DR**
CITY: **HENDERSON**  STATE: **NV**  ZIP CODE: _____
PHONE#: **270-9360**

IF ALTERNATE INFORMATION REFUSED, LESSEE MUST SIGN: _____

AUTHORIZED ACCESS PERSONS: **James Fiscus, Charles Bell**

WHOSE RESIDENCE AND ALTERNATE NAME AND ADDRESSES ARE SET FORTH ABOVE, FOR THE PURPOSE OF LEASING OR RENTING A CERTAIN SPACE AS HEREINAFTER DESCRIBED AND WITH THE EXPRESS UNDERSTANDING AND AGREEMENT THAT NO BAILMENT OR DEPOSIT OF GOODS FOR SAFEKEEPING IS INTENDED OR CREATED HEREUNDER.

It is agreed by and between Lessor and Lessee as follows:
**1. THESE FACILITIES ARE OPERATED UNDER THE NEVADA SELF-STORAGE ACT. (N.R.S. 108.472.SEQ.)**

**2. DESCRIPTION OF PREMISES**
Lessor leases to Lessee and Lessee leases from Lessor the above referenced storage unit and or parking space (hereinafter the "Premises") located at **ALL STORAGE** and included in a larger facility at the same site containing similar leased real property and common areas for the use of Lessee and other Lessees (the entire facility is hereinafter referred to as the 'Project'). Lessee has examined the Premises and the Project and by placing his initials hereto acknowledges and agrees that the Premises and the common areas of the Project are satisfactory for all purposes, including the safety and security thereof, for which Lessee shall use the Premises or the common areas of the Project. Lessee shall have access to the Premises and the common areas of the Project only during such hours and days as are regularly posted at the Project. **LESSEE MUST ENTER ACCESS CODE OR BE SUBJECT TO A $50 FEE TO RESET ALARM - X** _____

**3. TERM**
The term of this Rental Agreement shall commence as of the date first above written and shall continue on a month-to-month occupancy.

**4. RENT**
Lessee shall pay the Lessor as a monthly rent, without deduction, prior notice, demand or billing statement, the sum of $ **250.00** plus additional monthly rent of _____ due pursuant to paragraph 9, per month on or before the first of each month. Lessee shall pay, in advance, at least one full month's rent, and Lessee understands and agrees that under no circumstances will Lessee be entitled to a refund of the first full months rent. Any rent paid in excess of that owed for the first month shall be credited to rent payable for the month immediately following. With respect to any month-to-month tenancy, the monthly rent may be adjusted by Lessor effective the month following written notice by Lessor to Lessee specifying such adjustment, which notice shall be given not less than thirty (30) days prior to the effective date of any such adjustment. Any such adjustment in the monthly rent shall not otherwise affect the terms of this Rental Agreement and all other terms of this Rental Agreement shall remain in full force and effect. **NO PARTIAL MONTH REFUNDS.**

**5. FEES AND DEPOSITS - X** _____
(a) Concurrently with the execution of this Rental Agreement, Lessee shall pay to Lessor $10.00 as a non-refundable new account administration fee.
(b) All rent shall be paid in advance on the 1st day of each month and in the event the Lessee fail to pay the rent by the 5th day due, Lessee shall pay, in addition to any other amounts due, a late charge of $10.00. If delinquency of rent payment continues, other late charges will be assessed as follows: on the 15th day of delinquency: $15.00, on the 30th day of delinquency: $25.00. In addition to the late charges the following actions and or fees will apply: on the 30th day of delinquency Lesseels lock will be removed from Lessee's storage unit to determine if Lessee is occupying the unit. If the storage unit is occupied, Lessor will secure the door with its own lock. On the 45th day of delinquency, a certified letter will be sent to the last address of record notifying Lessee that on the 14th DAY FROM POSTMARK AN AUCTION WILL OCCUR TO LIQUIDATE STORED ITEMS TO SATISFY PAST DUE RENT AND FEES. In addition, an announcement will be placed in the local newspaper advertising the auction and as further legal notification of the delinquency. On the 45th day an advertising and notification fee of $50.00 will be assessed.
(c) Rental checks returned not paid will result in a $25.00 NSF charge to the Lessee's unit. In addition, late charges may be assessed.
(d) Lessee has the option of receiving a monthly invoice for a $3.00 charge. YES _____ NO _____

**6. LIMITATION OF LESSOR'S LIABILITY-INDEMNITY**
Lessor and Lessor's Agents shall not be liable to Lessee for any damage, loss or personal injury to any person, Lessee or any property stored in, on or about the Premises or the Project, arising from any cause whatsoever, including, but not limited to, theft, fire, mysterious disappearance, rodents, acts of God or the active or passive acts, omissions or negligence of Lessor or Lessor's Agents, except that Lessor or Lessor's Agents, as the case may be, may, except as otherwise provided in paragraph 5, be liable to Lessee for damage, loss or personal injury to Lessee or Lessee's property resulting from Lessor's or Lessor's Agent's fraud, willful injury or willful violation of law. Lessee shall indemnify and hold Lessor and Lessor's Agents harmless from any and all damage, loss, or personal injury arising out of or in connection with any damage, loss or personal injury to any person or property occurring in, on or about the Premises, arising in any way out of Lessee's use of the Premises, whether occasioned by Lessor or Lessor's Agents active or passive acts, omissions or negligence or otherwise, other than damage, loss or personal injury in connection with Lessor's or Lessor's Agents fraud, willful injury or willful violation of law. Notwithstanding anything contained in this Rental Agreement, in no event shall Lessor or Lessor's Agents be liable to Lessee in any amount in excess of $100 for any damage, loss or personal injury to any person, Lessee or any property stored in, on or about the Premises or the Project arising from any cause whatsoever, including, but not limited to, Lessor's or Lessor's Agents active or passive acts, omissions or negligence. **LESSEE ACCEPTS RISK OF LOSS. TENANT IS ADVISED TO PURCHASE INSURANCE ON TENANT'S STORED PROPERTY. THE NEVADA LEGISLATURE HAS DECLARED THAT SUCH INSURANCE IS AVAILABLE THROUGH MOST INSURERS.**
By placing his initials hereto, Lessee acknowledges that he has read, understands and agrees to the provisions of this paragraph. - X _____

IN WITNESS WHEREOF, the parties hereto have executed this AGREEMENT and acknowledges that they have read, are familiar with, and agree to all terms and conditions contained on both sides of this AGREEMENT the day and year first written above, at Las Vegas, Nevada.

BY _____ (lessor/agent)   BY _____ (Lessee)

Continued on reverse side - X _____

7. **USE OF PREMISES AND COMPLIANCE WITH LAW.** Lessee shall not store on the Premises personal property in or to which any other person has any right, title or interest. It is understood and agreed that Lessee may store personal property of various types and values in, or about the Premises without Lessor's knowledge, supervision or control, the value of which may be difficult or impossible to ascertain. It is specifically understood and agreed that Lessor need not be concerned with the kind, quantity, or value of personal property or other goods stored by Lessee in or about the Premises pursuant to this Rental Agreement. Lessee shall not store any improperly packaged food or perishable goods, flammable materials, explosives or other inherently dangerous material, nor perform any welding on the Premises or in the Project. Lessee shall not store any personal property on the Premises which would result in the violation of any law of any governmental authority and Lessee shall comply with all laws, rules, regulations and ordinances of any and all governmental authorities concerning the Premises or the use thereof. Lessee shall not use the Premises in any manner that will constitute waste, nuisance, or unreasonable annoyance to other Lessees in the Project. Lessee acknowledges and agrees that the Premises and the Project are not suitable for the storage of heirlooms or precious, invaluable, or irreplaceable property such as books, records, writings, works of art, objects for which no immediate resale market exists and objects which are claimed to have special or emotional value to the Lessee. Lessee agrees that the value of any such item shall not exceed for any purpose the salvage value of the raw materials of which the item is constituted. Lessee acknowledges that the Premises may be used for storage only, and that the use of the Premises for the conduct of business or for human or animal habitation is specifically prohibited. **IT IS UNLAWFUL TO USE THIS STORAGE FACILITY AS A RESIDENCE.**

8. **TRASH DISPOSAL.** Rent of a storage facility or parking place does not allow one to dispose of any trash whatsoever on the Project or in the Project's dumpster. A Lessee disposing of refuse on the Project, without management consent, will obligate Lessee to pay additional fees, non-payment of which could cause termination of Lessee's right to use the Premises or cause a lien to be placed on Lessee's unit and property. On site manager will set fees to use the dumpster on an available basis dependent upon quantity and makeup of refuse.

9. **LESSOR'S LIEN.** Lessee's personal property in or on the Premises will be subject to a claim for a lien in favor of Lessor and may be sold to satisfy that lien if the rent or other charges due under the Rental Agreement remain unpaid for fourteen (14) consecutive days. In addition, if rent or other charges due under the Rental Agreement remain unpaid for fourteen (14) days or more, Lessor may terminate Lessee's right to use his individual space.

10. **USE OF ELECTRICITY.** In addition to the basic monthly rent payable as provided in paragraph 3 above, Lessee shall pay the additional rent shown in paragraph 3 above in the event Lessee desires the right to use electrical appliances or equipment such as refrigerators, freezers, electrical power tools and like, on the Premises.

11. **ALTERATIONS.** Lessee shall not make or allow any alterations of any kind or description whatsoever to the Premises without, in each instance, the prior written consent of the Lessor.

12. **LOCK.** Lessee shall provide, at Lessee's own expense, a lock for the Premises which Lessee, in Lessee's sole discretion, deems sufficient to secure the Premises. Lessee shall not provide Lessor or Lessor's Agents with a key and/or combination to Lessee's lock. Lessee will not place more than one lock on its door. Lessor will remove any additional locks in the case of delinquency.

13. **RIGHT TO ENTER, INSPECT, AND REPAIR PREMISES.** Lessee shall grant Lessor, Lessor's Agents or the representatives of any governmental authority, (including police and fire officials) access to the Premises upon three (3) days prior written notice to Lessee. In the event the Lessee shall not grant access to the Premises as required or in the event of an emergency or upon default of any of Lessee's obligations under this Rental Agreement, Lessor, Lessor's Agents or representatives of any governmental authority shall have the right to remove Lessee's lock and enter the Premises for the purposes of examining the Premises or the contents thereof or for the purpose of making repairs or alterations to the Premises and taking such other action as may be necessary or appropriate to preserve the Premises, or to comply with applicable law or enforce any of Lessor's rights. In the event of any damage or injury to the Premises or Project arising from the active or passive acts, omissions or negligence of Lessee, all expenses reasonably incurred by Lessor to repair or restore the Premises or Project shall be paid by Lessee as additional rent and shall be due upon demand by Lessor.

14. **NO WARRANTIES.** Lessor hereby disclaims any implied or express warranties, guarantees or representations of the nature, condition, safety or security of the Premises and the Project and Lessee hereby acknowledges, as provided in paragraph 1 above, that lessee has inspected the Premises and hereby acknowledges and agrees that Lessor does not represent or guarantee the safety or security of the Premises or of any property stored therein. This Rental Agreement sets forth the entire agreement of the parties with respect to the subject matter hereof and supersedes all prior agreements or understandings with thereto.

15. **TERMINATION.** This Rental Agreement shall terminate at the expiration of any term of this Rental Agreement by the party desiring to terminate this Rental Agreement giving written notice by certified or registered mail to the other party of such party's intention to terminate not less than ten (10) days before expiration of the term. Further, this Rental Agreement may, at the option of the Lessor, be terminated upon any default by Lessee under the terms of this Rental Agreement or abandonment of the Premises by Lessee, or by lessor's acceptance of Lessee's oral offer to terminate given not less than two (2) days before the proposed date of termination.

16. **CONDITION OF PREMISES UPON TERMINATION.** Upon termination of this Rental Agreement, Lessee shall remove all Lessee's personal property in the Premises unless such property is subject to Lessor's lien rights pursuant to paragraph 9 and shall immediately deliver possession of the Premises to lessor in the same condition as delivered to Lessee on the commencement date of this Rental Agreement, reasonable wear and tear excepted. Lessees must notify Project Manager upon move-out and leave unit unlocked or Lessee's liability for payment of rent will continue until such time as notification of move out is received.

17. **NOTICES.** Except as otherwise expressly provided in this Rental Agreement or by law, any written notices or demands required or permitted to be given under the terms of this Rental Agreement may be personally served or may be served by first class mail deposited in the United States mail with postage thereon fully prepaid and addressed to the party so to be served at the address of such party provided for in this Rental Agreement. Service of any such notice or demand shall be deemed complete on the date delivered, if personally delivered, or if mailed, shall be deemed complete on the date of deposit in the United States mail, the postage thereof fully prepaid and addressed in accordance with the provisions hereof.

18. **NOTIFICATION OF CHANGE OF ADDRESS.** In the event Lessee shall change Lessee's place of residence or alternate name and address as set forth in this Rental Agreement, Lessee shall give Lessor written notice of any such change within ten (10) days of the change, specifying Lessee's current residence and alternate name, address and telephone numbers. Failure to notify Lessor of any change of address and or phone number in conjunction with failure to pay rent when due will cause termination of this Rental Agreement and any property left on the Premises, whether secured or not, will be considered abandoned.

19. **ASSIGNMENT.** Lessee shall not assign or sublease the Premises or any portion thereof without in each instance the prior written consent of Lessor.

20. **SUCCESSION.** All the provisions of this Rental Agreement shall apply to, bind and be obligatory upon the heirs, executors, administrators, representatives, successors and assigns of the parties hereto.

21. **CONSTRUCTION.** This Rental Agreement shall be governed and construed in accordance with the laws of the State of Nevada. Whenever possible, each provision of this Rental Agreement shall be interpreted in such manner as to be effective and valid under applicable law, but, if any provision of this Rental Agreement shall be invalid or prohibited under such applicable law, such provision shall be ineffective only to the extent of such prohibition or invalidity with invalidating the remainder of such provision or the remaining provisions of this Rental Agreement.

22. **TIME.** Time is of the essence of this Rental Agreement.

23. **RULES AND REGULATIONS.** The rules and regulations posted in a conspicuous place at the Project are made a part of this Rental Agreement and Lessee shall comply at all times with such rules and regulations. Lessor shall have the right from time to time to promulgate amendments and additional rules and regulations for the safety, care and cleanliness of the Premises, Project and all common areas, or for the preservation of good order and upon the posting of any such amendments or additions in a conspicuous place at the Project they shall become a part of this Rental Agreement.

24. **ATTORNEY'S FEES.** Lessee agrees to pay all costs, charges and expenses, including reasonable attorney's fees, incurred by lessor in connection with collection of rent, in enforcement of any rights under this Rental Agreement or any litigation or controversy arising from or in connection with this Rental Agreement. All such costs, charges and expenses shall be made a part of any lien claimed by, or judgement rendered for, Lessor. If no action is instituted by Lessor, such costs, charges and expenses shall be paid by Lessee along with any other claims by lessor upon demand.